We'll move to our final case of the morning. That's Appeal Number 22-1149, Jeffrey Lane v. Structural Iron Workers Fund. Good morning. Denise Clark, representing Jeffrey Lane. Good morning to you. May I please have the floor? This court has shown Chevron deference to the Department of Labor's regulations under ERISA for rights of action under the statute. George v. Junior Achievement of Indiana was a 2012 decision of this court, which discusses that deference, in particular as it relates to claims and appeals and the administrative process. And as a consequence, many courts have concluded that those claims and appeals processes need to be followed before litigation is commenced in federal court. The Department of Labor has been issuing regulations under ERISA as it relates to the claims and appeals since 1977. They were amended in 2000, again in 2001, and most recently in 2016. Those most recent regulations went into effect in 2018. Those regulations were specifically drawn up to address disability benefit claims and appeals. In that process, the department identified specific issues as it relates to the adjudication of disability benefit claims, in particular as it relates to the disclosure of information that is found by plan administrators as they are adjudicating these claims. The department's emphasis, and it always has been, is to provide disclosure to participants so that they know how to respond to a plan administrator, fiduciaries, trustees. Jeffrey Lane was entitled to a copy of the independent medical examination. In this case, he never received it. As a result of that, he was not able to respond in total to his benefit claim denial. Further, I think there is an issue regarding whether or not the plan properly interpreted its own plan language. Under section 4.01 of the plan, the plan provides for two particular circumstances when you are eligible for benefits. One, if you have 15 credits with at least one in a contributing period of the calendar year in which you become totally and permanently disabled. And the other is if you have five pension credits when you become totally and permanently disabled from an accident sustained on the job for which you become, but while you were on the job as an iron worker, for which you become totally and permanently disabled. The problem with the plan is its definition of totally and permanently disabled. Under section 4.03a, which in the record is 13-9 at page 27, only has one definition. Entitled to benefit payments from SSA makes you totally and permanently disabled. It doesn't comport with 4.02, 4.012, which is where Mr. Lane became eligible. In other words, it definitely aligns with the first provision. You're totally and permanently disabled. You've got your 15 credits. You don't have to be totally and permanently disabled on the job. You just have to be receiving Social Security benefits. But if you were to align the provision that Mr. Lane was under with the definition of totally and permanently disabled, there would be no inquiry about whether or not he was injured on the job, because he was receiving benefits. He received an award. He was eligible in July of 2018 to receive those benefits the same month in which he was seeking to retire under the terms of the plan. So if you are primary, our first primary argument here is that the plan administrator and trustees basically used a new version for becoming permanently disabled without providing a definition of how to show that you are totally and permanently disabled. Social Security does not issue awards in which they'd say it's this date, it's this injury. They look at the totality of the person to determine when they become totally and permanently disabled. In reaching their decision, they certainly took into account what he suffered in 2014, but also as he said to the plan administrator in one of his pieces of correspondence, he attempted to return to work in 2017. And suffered another injury. And there is evidence in the record that shows that he had an injury, and there's evidence in the record that shows that the plan administrator was on notice. So for Social Security to have only considered the May 2014 injury alone would have been impossible, but they certainly would have considered his totality of work. And the fiduciary should have taken into account that this gentleman was injured on the job at least in two years, and should have explored it further. Full fair review is what we're talking about here. The Department of Labor has been very specific about this in their regulations from 1977 to date. But more importantly, as I've pointed out in our briefs, and I'll emphasize again here today, this plan adopted the 2016 rules, specifically the full and fair review provision. And 7.06D of the plan. Unfortunately, they did not apply the terms of the plan. So in two instances, there was a failure to follow the terms of the plan. First. Is this your point about the failure to provide a copy of the independent review report that Dr. Sterling did? That's correct. Okay. Have you received a copy of it today? No. I have a copy of the... Of the MRI, do you have a copy of it? Yeah. That became... When did it become available? When he received the denial. So not before the final determination was made, which... Pre-appeal or post-appeal? It would have been post-appeal. Okay. When the appeal challenging the denial was affirmed or upheld? Correct. Okay. Even though you didn't have a copy of it, did you know the basis for Dr. Sterling... Was there any communication about the substance or the findings that Dr. Sterling had made? Not to Mr. Lane, no. Okay. He knew that some independent review was going on? No. He was not told there would be an independent review. Okay. I'm actually past my time, so I'll reserve... Well, you can... Okay. We'll give you some rebuttal time. No problem. You're fine. Okay. Don't worry about it. No problem. Did you have... Okay. Yeah. Okay, Mr. Kroll, good morning. Good morning. May it please the court. My name is Jeffrey Kroll, and I represent the Apple Lee, the Structural Ironworkers Local No. 1 Pension Trust Fund. This court should affirm the district court's well-reasoned decision for three reasons. First, this court should affirm the district court's decision, which affirmed the trustee's decision to deny Mr. Lane's application for disability benefits because the decision was reasonable. Second, this court should affirm the district court's decision because any alleged regulatory shortcomings asserted by Mr. Lane for the first time on appeal were not developed at the district court level and therefore are waived. Third... And what specifically do you have in mind there? With respect to what was waived? What wasn't properly developed? Any argument with respect to the particular regulation under... What is it? 29 CFR 2560.503-H4. Okay. All right. The deal... Not there. What about the point I was just talking to Ms. Clark about with respect to Dr. Sterling's report, the report of the independent reviewer? First off, opposing counsel is incorrect. He was informed that that review was going to occur in a letter from June of 2020. Regardless, a form that it was going to occur, and then what did he learn about its outcome, about the findings that were in the MRI report? In Dr. Sterling's IME report, he learned that following the appeal denial. He learned that he was denied. Were reasons given? Of course, there were reasons given. They relied on... The trustees relied on the IME, the independent medical examination from Dr. Sterling, as they're entitled to do. And is there a letter or something in the record that you have in mind that would have told Mr. Lane that? Absolutely, Your Honor. There's a... I believe it's in the administrative record under Exhibit F. It's our letter to Mr. Lane. It's dated August 20th of 2020. And in this letter, it states, further, the independent medical review found that your medical records do not support a finding that your disability, determined by the SSA, is the result of an on-the-job injury. He was made aware of the trustees' rationale for the decision. Now, going back on this waiver issue, I think it's important that this court note that the record is silent, ultimately, on whether or not that IME was ever given to Mr. Lane prior to the appeal decision. I don't know whether or not it was given to him or not. And you know why? Because Mr. Lane never developed any of those facts at the district court. He could have alleged in his complaint, first off, that that was not given to him as allegedly required by these statutes. There was no such allegation. There's no reference to a failure to do it in any of the summary judgment briefings, either. And this is the Sterling? When you say IME, you're talking about an independent medical examiner? And is that Sterling? That's correct. OK. So there's nothing in the record because it wasn't developed at the district court level. Of return of this case, Mr. Lane wants the pension fund to do his work. And the record actually shows that it gave him several opportunities over a six month period to provide documentation, which showed that there was a causal link between his May 24th injury and his disability. He eventually produced a letter which the trustees determined actually supported a denial because his own treating physician, Dr. Cordes, indicated there was a multitude of different injuries which ultimately led to his disability. And it was only after that denial that Dr. Cordes made his own clarification letter in which he identified and clarified in a one sentence opinion that the disability was caused by his May 2014 on the job injury. Now, looking back at that with respect to the May 24th, 2014 injury, the trustees then said, OK, we're going to send it off as they're required to to have Dr. Sterling or any other independent medical examiner. Dr. Sterling was who happened to be selected from the panel to review that decision. And ultimately that that opinion, excuse me, from Dr. Sterling was the opposite of what Dr. Cordes indicated in his clarification letter. And the trustees, because the plan here has firestone discretion in it, are entitled to deference in whether or not and what what opinion medical evidence before them they look to and ultimately conclude and make their decision on. And that's what happened here. And under this court's precedent, under arbitrary and capricious, it has to be downright unreasonable. And to say that when there's a process where Mr. Lane is given every single opportunity to provide documentation with supports that he is disabled as a result of that on the job injury. And it's not just an on the job injury. Importantly, it's actually an on the job injury that's sustained while on the job and employed by a contributing employer is an iron worker. So if there is any sort of illusion that that Mr. Lane's counsel is alluding to here about another injury in 2017, there is nothing in the record that indicates that that 27 injury that she appears to be referring to here meets that requirement that it be an on the job injury working as an iron worker for a contributing employer. What's more, Mr. Lane only had nine credits and he began in this apprenticeship program in the iron working industry in the 1980s. So one can presume that he was working in a lot of other areas outside of iron worker if he only had nine credits over a 30 year period. Now, with respect to our waiver claim, our waiver argument, I think it's clear that this court shouldn't even get into that. Not because not first, excuse me, first, because there's no fact in the record whether or not ultimately the IME was provided to him. As Mr. Lane alleges, it should have been second. She didn't raise it. Hold on. Is that you suggesting it was? I know. I don't know. There's nothing in the record indicating the letter you were talking about earlier didn't say and attached is a full copy of Dr. Sterling's report. It was provided to him. After the appeal, her argument is that this should have been ultimately provided before the trustees decided it on appeal. Well, I thought the whole point was the report was prepared while the matter was on appeal. Of course. Absolutely. It wouldn't even have existed. That's correct. Once it came into existence, they wrote in this letter that you were referring to Exhibit F. Correct. And they attached the report to Exhibit F. I do believe that. Let's see here. Yes, it's a paragraph, the last paragraph of the August 20th letter, it says the last sentence is a copy of the M.R.I.O.A. report. So was it with that letter? Correct. The August 20th, 2020 letter. So with respect to Mr. Lane's arguments on Chevron, you know, those really weren't raised in anywhere in the complaint. I'm not sure exactly where she's going with that. But on the other component here regarding the application of the plan terms. First off, this court in Serratano held that the trustees, when there is Firestone discretion, their interpretation of the plan terms should be entitled to deference. So we should all be looking at this under that guise. Now, her argument, Mr. Lane's argument, excuse me, that Section 4.03 gives him ultimately a benefit would essentially negate the distinction in 4.01A1 and 4.01A2, which Mr. Lane's counsel referred to here moments ago. 4.01A refers to participants that have 15 or more credits. 14.01A2, excuse me, the first component was 14.01, excuse me. 4.01A1 refers to 15 credits. 4.01A2 refers to individuals with less than 15 credits. So if you were to. Agree with Mr. Lane's argument, you would essentially negate any sort of distinction made between those two, because 14.01A2 for participants with less than 15 pension credits requires that it be as a result of an accident sustained while on the job employed by a contributing employer as an ironworker. And the record here shows that the trustees gave Mr. Lane the opportunity to produce evidence which demonstrated that he satisfied that requirement. He ultimately provided a clarifying letter from his treating physician. The trustees obtained an IME from an independent doctor who concluded differently. And the fact that Mr. Lane doesn't like it doesn't mean that it's wrong. All that's required under this court's precedent is that it be in order to overturn it, that it be downright unreasonable. OK. And for that, I'm sorry, I'm over. You don't have to apologize. We got your position. Thank you very much. Very quickly, your honor, as to the August letter that was referred to by the appellee. That's the denial letter. That's what it's that's what the report was attached to. So it sounds, though, like the it the the review was undertaken because I at least as I remember the record, Mr. Lane raised a meaningful enough question about what was the cause, you know, of the disability that they got this route. They got this Sterling, Dr. Sterling involved. That's correct. OK. But the report couldn't possibly have been disclosed until the work was done. But the plan document itself says he is supposed to get it within and be given time to respond to it. And that was the point I was making with regard to the Chevron difference to the Department of Labor's regulations. 7.060 of the plan adopts that provision. And it says that the participant is supposed to be provided that plan provision and states that that individual is supposed to be given time to to respond to the wrath of the new rationale that has been produced by the participant up by the plan administrator and that the reason that is important here is that multi-employer plans are given a different time frame within which to make plan decisions. They can do it on a quarterly at their quarterly meetings. So if they had provided Mr. Lane that report, given him time to respond, it they certainly could have timed it to their next quarterly meeting. That would have been been the time when they closed the appeal make and issued the denial. The other thing that I want to speak to, if I still have some time. Is that. The plan, I want to emphasize that the Supreme Court in Cigna versus Amara made it very clear that you're supposed to be looking at the plan terms as written. The idea that this was a reasonable decision where you are disregarding plan language, adding language into a provision that doesn't exist, in particular, a requirement that that there had to be a Social Security determination that said you were injured on the job at that particular point. And to disregard a plan amendment that you put into the plan to specifically comply with the 2016 regulations, I think demonstrates that there was arbitrary and capricious decision making here. And finally, I think with regard to whether or not Mr. Lane was working as an ironworker, it was never there were no facts ever presented. They never challenged whether or not he was working for a contributing employer in 2014 or in 2017 when he was injured. So he certainly met those requirements. For this reason, I think it's important to remand this matter back to the district court for full consideration of all facts. Thank you, Mr. Clark. Thanks to you, Mr. Cole. Thanks to you. We'll take the case under advisement and the court will stand in recess. Thank you.